23 F.3d 399
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Rhumell BALL; Ray Ball, husband of Rhumell Ball,
Plaintiffs-Appellants,
v.
QUORUM HEALTH RESOURCES, INCORPORATED, formerly known as
H.C.A. Management Company, Incorporated, Defendant
& Third Party Plaintiff-Appellee,
v.
John Allen, Doctor, Third Party Defendant.
Rhumell BALL; Ray Ball, husband of Rhumell Ball, Plaintiffs-Appellees,
v.
QUORUM HEALTH RESOURCES, INCORPORATED, formerly known as
H.C.A. Management Company, Incorporated, Defendant
& Third Party Plaintiff-Appellant,
v.
John Allen, Doctor, Third Party Defendant.
 Nos. 93-1622, 93-1657.
 United States Court of Appeals, Fourth Circuit.
 Argued December 8, 1993.
Decided April 29, 1994.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Graham C. Mullen, District Judge. (CA-91-99-5-MU)
 John Paul Kapp, Kapp, Day & Associates, P.L.C., Galax, Va., for appellants.
 J. Dennis Bailey, Bell, Davis & Pitt, P.A., Winston-Salem, N. C., for appellee.
 On brief: C.Michael Day, Kapp, Day & Associates, P.L.C., Galax, Va.; Sherrie R. Hodges, West Jefferson, N.Ca., for appellants.
 Joseph T. Carruthers, Charlot F. Wood, Howell A. Burkhalter, Bell, Davis & Pitt, P.A., Winston-Salem, N.C., for appellee.
 W.D.N.C.
 REVERSED AND REMANDED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Rhumell Ball and Ray Ball (hereinafter "Plaintiffs") filed a medical malpractice action against Quorum Health Resources, Inc. (hereinafter "Quorum") as the corporate manager of Ashe Memorial Hospital, alleging that Quorum was liable to them under the legal doctrines of respondeat superior and corporate negligence.[1] Quorum subsequently filed a third party action against Dr. John Allen, the operating surgeon.
 
 
 2
 Quorum further filed a motion for summary judgment and a motion to dismiss. The district court granted Quorum's motion for summary judgment, disposing of all claims with respect to all parties, and denied the motion to dismiss. This appeal and cross-appeal followed.
 
 I. BACKGROUND
 
 3
 On March 19, 1987, Dr. Allen performed an excision of a cyst in the right breast of Mrs. Ball. This procedure was performed in Ashe Memorial Hospital's emergency room facilities on an outpatient basis, as pre-arranged by Dr. Allen. Dr. Allen is a physician who operates his own private practice and also holds the administrative position of Chief of Staff at Ashe Memorial Hospital. The parties' disputes arise from the alleged negligence occurring during this operation.
 
 
 4
 The alleged negligence revolves around the question of whether or not any tissue was removed from Mrs. Ball's breast and, if so, why there was no tissue sample submitted to the pathology lab. Mrs. Ball alleges that Dr. Allen removed tissue from her breast during the surgery of March 19, 1987, but later failed to submit that tissue for examination by a pathologist. Dr. Allen contends that he removed no tissue from Mrs. Ball's breast, and that consequently, there was no sample to submit to pathology. There are no other witnesses as to whether tissue was or was not removed because no Ashe Memorial Hospital employees assisted or in any way participated in Mrs. Ball's surgery. The parties agree that no tissue from the March 1987 surgery was ever submitted to pathology for microscopic examination.
 
 
 5
 On October 23, 1987, seven months after the initial operation, Mrs. Ball had a breast mass in her right breast removed by a different physician, Dr. William DuSold. Dr. DuSold submitted that mass sample to pathology for microscopic examination, which revealed cancer. Dr. DuSold performed a radical mastectomy on November 9, 1987, at Ashe Memorial Hospital. Mrs. Ball's cancer recurred in October of 1989. On October 19, 1989, Dr. DuSold performed a third operation to remove the recurrence of the cancer. This operation was also performed at Ashe Memorial Hospital. In November of 1989, Mrs. Ball learned that she probably had residual cancer and needed chemotherapy.
 
 
 6
 Quorum managed Ashe Memorial Hospital pursuant to a management contract at the times of all of Mrs. Ball's aforementioned operations. Quorum is an administrative management company which offers its expertise to hospitals desiring assistance in managing their business operations.
 
 II. ISSUES
 
 7
 The Plaintiffs allege that Quorum is liable to them under two theories. The first basis of liability alleged is that an employee-employer relationship existed between Dr. Allen and Ashe Memorial Hospital, such that Dr. Allen was considered an agent of Quorum. The second basis of liability is founded on the doctrine of corporate negligence. The district court found that there was no genuine issue of material fact as to either of these theories of liability and granted judgment for Quorum as a matter of law pursuant to Fed.R.Civ.P. 56.
 
 
 8
 Plaintiffs appeal the district court's grant of summary judgment to Quorum. Quorum cross-appeals the denial of its motion to dismiss based on North Carolina's statute of limitations and statute of repose should this court disagree with the district court's grant of summary judgment. Because this court finds that this action is barred by the statute of limitations, we decline to address the issues raised in Quorum's motion for summary judgment. Thus, this action is remanded with instructions that it be dismissed based on a violation of North Carolina's statute of limitations and statute of repose for medical malpractice actions.
 
 III. ANALYSIS
 
 9
 A motion to dismiss based on a statute of repose or the statute of limitations should not be granted unless the pleadings construed in the light most favorable to a plaintiff show as a matter of law that the applicable period for filing suit has expired. If matters outside the pleadings are considered by the court, the motion to dismiss is converted to a motion for summary judgment. Fed.R.Civ.P. 12(c).
 
 
 10
 Quorum argues on appeal that the district court improperly denied its motion to dismiss based on North Carolina's three year statute of limitations and four year statute of repose.[2] Quorum contends that any alleged negligent acts of Quorum had to occur no later than October 23, 1987, the date breast tissue was removed and determined cancerous.[3] Plaintiffs did not file their complaint until October 28, 1991; therefore, Quorum argues that this action is barred by the statute of limitations and the statute of repose. Mrs. Ball asserts that her second and third operations were part of a continuing course of negligent treatment by Quorum and that the continued course of treatment exception to the statute of limitations and statute of repose mandates that her cause of action accrue with her last visit to Ashe Memorial Hospital in October of 1989. An October 1989 accrual date would place Mrs. Ball's action within the three year statute of limitations and four year statute of repose.
 
 
 11
 In denying Quorum's motion to dismiss, the district court applied the "continuing course of treatment" rule. North Carolina recognizes this rule as an exception to the three year statute of limitations and four year statute of repose.[4] The North Carolina Court of Appeals first recognized the continued course of treatment exception in Ballenger v. Crowell, 38 N.C.App. 50, 247 S.E.2d 287 (1978), stating:
 
 
 12
 The continued course of treatment rule ... applies to situations in which the doctor continues a particular course of treatment over a period of time. The theory is that "so long as the relationship of surgeon and patient continued the surgeon was guilty of malpractice during that entire relationship for not repairing the damage he had done and, therefore, the cause of action against him arose at the conclusion of his contractual relationship." Id. at 58, 247 S.E.2d at 293 (citations omitted). The North Carolina Court of Appeals elaborated on the scope of the rule in 1990. See Stallings v. Gunter, 99 N.C.App. 710, 714, 394 S.E.2d 212, 215, disc. rev. denied, 327 N.C. 638, 399 S.E.2d 125 (1990). "In Stallings, the [North Carolina] court recognized the applicability of the exception 'so long as the patient has remained under the continuous treatment of the physician for the injuries which gave rise to the cause of action.' " Conner v. St. Luke's Hosp., Inc., 996 F.2d 651, 653 (4th Cir.1993) (quoting Stallings, 99 N.C.App. at 714, 394 S.E.2d at 215). " '[T]he physician [must] continue[ ] to treat the patient for the particular disease or condition created by the original act of negligence.' " Id. at 653-64. "The court further outlined that '[t]o take advantage of the 'continuing course of treatment' doctrine, plaintiff must 'show the existence of a continuing relationship with his physician, and ... that he received subsequent treatment from that physician.' " Id. (emphasis added by court) (citations omitted).
 
 
 13
 In applying the continued course of treatment doctrine to the present case, the district court stated:
 
 
 14
 Under the "continued course of treatment" doctrine, which the court finds applies to this case, the plaintiffs' cause of action accrued "at the earlier of 1) the termination of the defendant's treatment of the plaintiff or 2) the time at which the plaintiff knew or should have known of his injury."
 
 
 15
 Order, p. 2 (citations omitted). The district court then concluded that Mrs. Ball discovered her injury only when she was informed after her third operation in October of 1989 that her cancer had recurred. That date was November 8, 1989. The district court further found that the "last act" of Quorum in the continuous course of treatment of Mrs. Ball occurred on October 19, 1989, the date of the third operation which was performed at Ashe Memorial Hospital while it was under the management of Quorum. Therefore, the district court concluded that the Plaintiffs' cause of action was found to have accrued on October 19, 1989, and their filing suit on October 28, 1991, was within both the three year statute of limitations and the four year statute of repose.
 
 
 16
 This court disagrees with the district court's reasoning. The facts of this action do not fit within the continued course of treatment exception. This court recently stated:
 
 
 17
 Despite its consistent application of the continued course of treatment exception, the North Carolina Court of Appeals has noted one limitation on its operation. In Mathis v. May, 86 N.C. App. 436, 358 S.E.2d 94, disc. rev. denied, 320 N.C. 794, 361 S.E.2d 78 (1987), the court noted that
 
 
 18
 "[a]lthough North Carolina has recognized the doctrine of a 'continued course of treatment' to extend the statute of limitations, it has never applied the doctrine where there has been a continued course of non-treatment."
 
 
 19
 Id., 86 N.C. App. at 440, 358 S.E.2d at 97. Here, the North Carolina court makes a distinction between the physician who prescribes a negligent course of treatment and then never rectifies the situation by adjusting treatment and the physician who never embarks on a necessary course of treatment in the first instance. In the latter case, the negligence occurs with the oversight occasioned by non-treatment and is not ongoing. Conversely, in the former case, the physician commits an affirmative blunder and, while continually reassessing the situation, fails to correct this blunder. The North Carolina courts view the negligence in this case to continue throughout the course of treatment.
 
 
 20
 Conner, 996 F.2d at 654 (emphasis added).
 
 
 21
 Based on the above, the negligence, if any, of the hospital and Quorum had to have occurred on March 20, 1987, when no tissue was submitted to the pathology lab. Like the physician in the above quote from Conner, "who never embarks on a necessary course of treatment in the first instance," the alleged omission by Quorum was a failure to treat in the first instance; there was no continuing negligent treatment by the hospital or Quorum after March 20, 1987.[5] Furthermore, "[t]he exception contemplates an ongoing patient-physician relationship revolving around a course of treatment directed at a certain malady." Id. There was no ongoing "patient-hospital" relationship in the present case. Mrs. Ball was in the constant care of private physicians. Mrs. Ball went to Ashe Memorial Hospital for her operations at the direction of her private physicians, not in the pursuit of treatment from the hospital itself. See id.
 
 
 22
 This action should therefore have been dismissed based on the statute of limitations and statute of repose. The district court erred in denying Quorum's Motion to Dismiss.
 
 IV. CONCLUSION
 
 23
 The district court is reversed on its denial of dismissal to Quorum. This action is therefore remanded with instructions that it be dismissed because it is barred by North Carolina's three year statute of limitations and four year statute of repose for medical malpractice actions.
 
 REVERSED AND REMANDED WITH INSTRUCTIONS
 
 
 [1]
 Federal jurisdiction is based on diversity of citizenship. 28 U.S.C. Sec. 1332. Rhumell and Ray Ball are citizens of North Carolina. Quorum is a corporation incorporated in the State of Delaware with its principal place of business in the State of Tennessee
 
 
 [2]
 The applicable statute of repose and limitations for medical malpractice actions in North Carolina provides, in relevant parts, that
 a cause of action for malpractice ... shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever ... the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action....
 N.C. Gen.Stat. Sec. 1-15(c).
 
 
 [3]
 Plaintiffs principally allege that Quorum negligently failed to submit Mrs. Ball's breast tissue to the pathology lab on March 19, 1987, the date Dr. Allen performed the cyst excision procedure. Quorum acknowledges that Plaintiffs could also, by implication, be alleging that Quorum was negligent in failing to rectify the mistake by calling Mrs. Ball back into the hospital between March 19, 1987 and October 23, 1987 to obtain more tissue to submit to pathology for a definitive diagnosis. In either event, Quorum contends that any negligent acts it may have done occurred no later than October 23, 1987, since Plaintiff learned of her cancer on that date
 
 
 [4]
 The North Carolina Court of Appeals has recognized this rule since 1978. The Supreme Court of North Carolina has yet to review the applicability of the continued course of treatment exception
 
 
 [5]
 Plaintiffs do not allege any negligence by the private physicians, the hospital or Quorum in the second and third operations