RISSOLO v. SLOOP

[135 N.C. App. 194 (1999)]

———————————

VICKIE L. RISSOLO, Plaintiff-Appellant v. CELESTE W. HUNTER SLOOP, D.D.S., Defendant-Appellee

No. COA98-1326

(Filed 5 October 1999)

**Statute of Limitations— dental malpractice—summary judgment—continuing course of treatment doctrine**

The trial court erred in granting summary judgment in a negligence case in favor of defendant-dentist because there is a genuine issue of material fact concerning whether to apply the continuing course of treatment doctrine in order to toll the statute of limitations under N.C.G.S. § 1-15(c).

Appeal by plaintiff from judgment entered 30 June 1998 by Judge E. Lynn Johnson in Durham County Superior Court. Heard in the Court of Appeals 16 August 1999.

*Pulley, Watson, King & Lischer, P.A., by Stella A. Boswell and Richard N. Watson, for plaintiff-appellant.*

*Newsom, Graham, Hedrick & Kennon, P.A., by William P. Daniell, for defendant-appellee.*

McGEE, Judge.

Plaintiff was a dental patient whose wisdom teeth extraction by defendant on 8 May 1992 began a series of complaints, discussions with and among dentists, and prescriptions to relieve her dental pain. Plaintiff alleged in her complaint that defendant provided her a continuing course of treatment to relieve pain from the date of her wisdom teeth extraction to 13 July 1993, when defendant cemented a crown on one of her teeth. Defendant filed an answer stating that no continuing course of treatment was provided, and therefore that the three-year statute of limitations was not tolled for any time subsequent to the extraction of the wisdom teeth. Defendant filed a motion for summary judgment which was heard on 8 June 1998. An order granting defendant's summary judgment motion was filed 30 June 1998. Plaintiff appeals.

Plaintiff argues there is a genuine issue of material fact under the continuing course of treatment doctrine as to whether the statute of limitations was tolled pursuant to N.C. Gen. Stat. § 1-15(c) (1996) resulting in plaintiff's claim being timely filed. "Summary judgment provides a drastic remedy and should be cautiously used so that no one will be deprived of a trial on a genuine, disputed issue of fact." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). "Summary judgment . . . is rarely appropriate in negligence cases." *Rouse v. Pitt County Memorial Hospital*, 343 N.C. 186, 191; 470 S.E.2d 44, 47 (1996) (citation omitted). "All of the evidence before the court must be construed in the light most favorable to the non-moving party. The slightest doubt as to the facts entitles the non-moving party to a trial." *Miller v. Talton*, 112 N.C. App. 484, 486, 435 S.E.2d 793, 796 (1993) (citation omitted).

Plaintiff's argument focuses on the continuing course of treatment doctrine. N.C.G.S. § 1-15(c) provides in pertinent part that:

RISSOLO v. SLOOP

[135 N.C. App. 194 (1999)]

a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action[.]

Our Supreme Court affirmed the "continuing course of treatment" doctrine in *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 137, 472 S.E.2d 778, 781 (1996) ("We now affirm that the continuing course of treatment doctrine . . . is the law in this jurisdiction."). Under this doctrine, so long as the patient has remained under the continuous treatment of the physician for the injuries which gave rise to the plaintiff's cause of action, plaintiff's claim is tolled until the earlier of (1) the termination of the physician's treatment of the patient, or (2) the time at which the patient knew or should have known of the injury. *Ballenger v. Crowell*, 38 N.C. App. 50, 60, 247 S.E.2d 287, 294 (1978). "It is not necessary under this doctrine that the treatment rendered subsequent to the negligent act itself be negligent, if the physician continued to treat the patient for the particular disease or condition created by the original act of negligence." *Stallings v. Gunter*, 99 N.C. App. 710, 714-15, 394 S.E.2d 212, 215 (1990) (citation omitted).

Plaintiff alleges that on 12 May 1992, four days after the extraction of her wisdom teeth (teeth numbers 1, 16, 17 and 32), she returned to defendant's office because she experienced severe pain near the extraction sites. Another dentist, who saw plaintiff because the defendant was on vacation, stated that plaintiff had an inflammatory reaction and prescribed medication. Her exam notes from that day indicated muscular tenderness and bilateral clicks of the temporomandibular joint. Two days later the same dentist diagnosed a dry socket on the site of tooth number 17. Plaintiff returned to this dentist at defendant's office on 16 May 1992, complaining that the pain had not decreased. She again spoke to the dentist on 20 May 1992 concerning continued pain. Plaintiff visited defendant's office on at least four more occasions between 21 May and 3 June, attended by defendant on the final three visits. She telephoned defendant on other days when she did not visit defendant's office.

Between June and December 1992, plaintiff discussed her continuing pain with defendant in a hair salon where defendant was a regular customer. On 7 December 1992, defendant recemented with temporary cement a crown that had been placed on plaintiff's tooth number 19 in March 1992 because plaintiff said she experienced pain in that area. Tooth number 19 is two teeth removed from the site of

extracted tooth number 17, which plaintiff recalls having been difficult for defendant to extract but which defendant says had been removed easily.

In January 1993, defendant advised plaintiff to consult an endodontist due to reported pain in teeth 18 and 19. On 25 January 1993, the endodontist performed a root canal on tooth 19 and the next day prescribed medication because of plaintiff's pain. The following day, defendant again recemented the crown on tooth 19 with temporary cement, and plaintiff reported pain the next day.

On 1 February 1993, the endodontist saw plaintiff and telephoned defendant to inform her that tooth 19 was ready to be crowned. On 8 February, the endodontist noted that tooth 18 was responsive to hot and cold and performed a root canal on tooth 18 that day. Plaintiff visited the endodontist with a complaint about tooth 20 on 22 February, and the endodontist, noting that tooth 18 was fine, telephoned defendant to tell her that the root canal on tooth 18 was complete. Three days later, plaintiff told defendant by telephone that she had pain from the tooth 18 root canal, and defendant prescribed medication.

The plaintiff complained to defendant of pain from tooth 20 on 1 March 1993, at which time plaintiff requested a referral to a named second endodontist. Defendant spoke with this second endodontist about plaintiff's two root canals and ensuing pain. When this endodontist found nothing wrong with plaintiff's teeth, defendant sent her to a third doctor who also found no problem.

The first endodontist's office notes indicate that on 5 March 1993 defendant told him that (1) plaintiff was having pain with heat and cold, which plaintiff believed was associated with tooth 19; (2) defendant had found no response from tooth 18 or 19 to a temperature test she administered on plaintiff; and (3) defendant was not sure of the origin of plaintiff's continuing pain. The two doctors discussed options, from which defendant decided plaintiff should have tooth number 19 refilled. Defendant spoke with the third doctor about plaintiff on 8 March 1993, and the first endodontist and third doctor had a conversation about plaintiff as well.

On 9 March 1993, plaintiff told the first endodontist that she had a tight pulling in her jaw and reported sensitivity to touch and liquid but not temperature. At that time the endodontist removed the filling in tooth 19 and refilled it with temporary filling. On 12 March, plain-

tiff reported soreness to the endodontist and never saw him again. She returned to defendant's office on 23 March to have the crown on tooth 19 recemented with temporary bonding glue. The recementing required an adjustment of plaintiff's bite, during which tooth 14, which is directly above tooth 19, was involved. Plaintiff states that tooth 14 was filed down, but defendant's notes only acknowledge the involvement of tooth 14 in an illegible notation. In any case, plaintiff reported sensitivity in tooth 14, for which defendant numbed the area and later recommended a crown.

Defendant placed a temporary crown on tooth 18 on 23 April 1993 and prescribed medication for pain. Defendant cemented the crown on tooth 18 and removed the crown on tooth 19 to insert a permanent filling on 10 May. On 7 June, defendant examined plaintiff and indicated in her notes both asymptomatic temporomandibular joint clicks and sensitivity in tooth 19. Plaintiff returned on 21 June for the crown preparation on tooth 14, at which time defendant prescribed more medication. Defendant cemented the crown for tooth 14 on 13 July 1993.

Plaintiff filed her complaint on 11 July 1996, within three years after her crown on tooth 14 was cemented. Plaintiff's contention, supported by expert opinion, is that her pain from the beginning had not been tooth problems but instead had been the result of temporomandibular joint dysfunction caused by a negligent extraction of her wisdom teeth by defendant on 8 May 1992. Plaintiff contends that all of the endodontic work performed subsequent to her wisdom teeth extraction, including the crown on tooth 14, was a continuing course of treatment for the pain associated with the original extractions. More specifically, plaintiff argues that a genuine issue of material fact exists about whether to apply the continuing course of treatment doctrine, which would preclude summary judgment for defendant. We agree.

In *Callahan v. Rogers*, 89 N.C. App. 250, 365 S.E.2d 717 (1988), our Court held that the trial court erred in granting the defendant's motion to dismiss the plaintiff's action based on the three-year statute of limitations where the evidence "tended to show that plaintiff filed the action pursuant to the continued course of treatment exception." *Id.* at 252, 365 S.E.2d at 718. The plaintiff in *Callahan* had been experiencing pain following a hip operation by the defendant and had undergone corrective surgery by another doctor within seven months of the alleged negligent operation. After the original operation, the

plaintiff had made postoperative visits to the defendant for the same injury and continued course of treatment. Our Court stated that "we believe these facts give rise to the application of the continued course of treatment rule[.]" *Id.* at 255, 365 S.E.2d at 720. We concluded that:

> [P]laintiff continued to seek treatment from defendant because of continued pain in that area for which medical attention was first sought. These visits continued over a period of six months, culminating in plaintiff's last visit on 24 June 1981 . . . [which was within the limitations period].

> On the record before this Court, there exists a genuine issue of material fact, and based on the evidence, defendant is not entitled to judgment as a matter of law.

*Id.*

In *Cobo v. Raba*, 125 N.C. App. 320, 481 S.E.2d 101 (1997), *aff'd*, 347 N.C. 541, 495 S.E.2d 362 (1998), a patient sued his psychiatrist for malpractice, but the defendant argued that the three-year statute of limitations barred any actions arising out of treatment rendered before the plaintiff tested positive for HIV because the defendant's treatment was distinctly different after that time. Our Court held that the psychiatrist's treatment, even if "more supportive" after the HIV test, did not change in that the sessions continued four times a week for discussions about how to manage the plaintiff's personal problems. *Id.* at 326, 481 S.E.2d at 106. As a result, "because defendant continued to treat [plaintiff] after 1986 for conditions that [he] has alleged were caused by defendant's negligence before 1986, the continuing course of treatment doctrine is applicable and plaintiffs' action was timely filed." *Id.*

Under the reasoning in *Callahan* and *Cobo*, there is a genuine issue of material fact in this case as to whether the crown on tooth 14 was related to the treatment for pain in tooth 19, which was being treated as part of a continuing course to relieve pain for a joint condition caused by defendant's negligent removal of wisdom teeth. From May 1992 through July 1993, plaintiff regularly communicated to defendant her complaints of continuing pain. Even though plaintiff was treated during this time by two endodontists and a third doctor, she also continued to receive treatment by defendant. Thus, plaintiff's evidence at least supports an inference that the statute of limitations had not expired before 11 July 1996. When the evidence is sufficient to support an inference that the limitations period has not expired,

that issue should be submitted to the jury. *Hatem v. Bryan*, 117 N.C. App. 722, 725, 453 S.E.2d 199, 201 (1995) ("[W]e conclude that the issue of when the limitations period expired is a question of fact for the jury.").

Reversed and remanded.

Chief Judge EAGLES and Judge WALKER concur.